UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRIN W. SHATNER,

    Plaintiff,

v.

MIKE ATCHISON, HARRINGTON, S. NWAOBASI and TIMOTHY VEATH

    Defendants.

Case No. 13-cv-704-JPG-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 60) of Magistrate Judge Philip M. Frazier recommending the Court grant the motion for summary judgment filed by defendant Dr. S. Nwaobasi (Doc. 44) and grant summary judgment for Nwaobasi on plaintiff Darrin W. Shatner's Eighth Amendment deliberate indifference to medical need claim. Shatner has objected to the Report (Doc. 62).

This case arose as a result of problems Shatner had with medical treatment for his ingrown toenails. While he was housed at Menard Correctional Center ("Menard"), he was seen by Nwaobasi, a medical doctor, and was scheduled for corrective surgery, but that surgery never happened. He was then transferred to Pontiac Correctional Center ("Pontiac") where he eventually received surgery to remove his toenails. In this case, he claims Nwaobasi was deliberately indifferent to his medical needs by causing delay in the prescribed surgery.

**I.    Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made.

*Id.* The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.     Report and Objection**

In his Report, Magistrate Judge Frazier found that Shatner attempted to exhaust his administrative remedies for his toenail treatment problems at Menard twice after his transfer to Pontiac. On February 17, 2013, Shatner filed an emergency grievance about his treatment (or lack thereof) at Menard and sent it to the warden of Pontiac. Illinois Department of Corrections ("IDOC") rules, however, require that a grievance about incidents at another institution be sent directly to the Administrative Review Board ("ARB"). 20 Ill. Adm. Code 504.870(a)(4). The grievance was returned, and Shatner was told that it should have been sent to the ARB, not the warden of Pontiac. Shatner then filed his second grievance on March 19, 2013, and sent it straight to the ARB. In it, he complained of Menard staff's refusing to take him to the health care unit for his toenails. However, Shatner did not file that second grievance until more than 60 days after his transfer from Menard to Pontiac, the last possible time Nwaobasi could have been deliberately indifferent to Shatner's medical needs. IDOC rules require a grievance to be filed within 60 days of discovery of an incident, 20 Ill. Admin. Code § 504.810(a), so the ARB rejected it because it was late, did not find good cause for its lateness, and declined to consider the grievance on the merits.

In the Report, Magistrate Judge Frazier found that Shatner had not exhausted his available remedies because he had not filed his grievances in the way the IDOC rules required. Magistrate Judge Frazier further found that Shatner's two grievances did not give prison officials notice and a

2

fair opportunity to correct Nwaobasi's medical decisions.

In his objection, Shatner discusses attempts to exhaust that Magistrate Judge Frazier did not address in the Report;   he argues that he filed three grievances about Nwaobasi while he was housed at Menard, but that Menard personnel prevented him from using the grievance process by throwing those grievances away.   Shatner further argues that Pontiac personnel misled him by telling him to file an emergency grievance rather than a grievance with the ARB.   He also argues he did not need to name Nwaobasi in his grievances, although he claims to have described him in the discarded grievances he filed at Menard.   The Court considers these questions *de novo*.

### III.   Analysis

The Court held an evidentiary hearing on the matter on July 14, 2015, to supplement the evidence in the record.   *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).   Shatner was present in person appearing *pro se*, Nwaobasi was present through counsel Carla Tolbert, and defendants Mike Atchison, Harrington, and Timothy Veath were present through counsel Brent Colbert, who appeared by telephone.   Nwaobasi presented two witnesses by videoconference: Regina Price, Shatner's primary correctional counselor while he was housed at Menard, and David Lingle, the clinical services supervisor while Shatner was housed at Pontiac.   Shatner testified on his own behalf.   The Court will discuss each witness' testimony as necessary in its discussion of Shatner's various attempts to exhaust administrative remedies against Nwaobasi.

####   A.   Legal Standards

The Prison Litigation Reform Act provides that a prisoner may not file a § 1983 suit "until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006).   Because the failure to exhaust administrative remedies is an affirmative defense, it is the defendant's burden to prove by a preponderance of the

evidence that the plaintiff did not exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

A grievance must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits).

IDOC regulations require an inmate to first seek to resolve his complaint informally with a counselor.  20 Ill. Adm. Code 504.810(a).  If the inmate is not satisfied, he then must file a written grievance with the grievance officer.  20 Ill. Adm. Code 504.810(a).  The grievance must be filed within 60 days of discovery of the incident, although late grievances will be considered if the inmate shows good cause for the delay.  *Id.*  The grievance officer investigates and reports his findings and recommendations to the chief administrative officer – the warden – who then makes a decision on the grievance.  20 Ill. Adm. Code 504.830(d).  If the inmate is not satisfied with the warden's decision, he may appeal that decision to the director of IDOC.  20 Ill. Adm. Code 504.850(a).  The director may make a decision on the grievance or refer the matter to the ARB for findings and recommendations.  20 Ill. Adm. Code 504.850(b).  After reviewing the findings and recommendations, the director then makes the final decision on the matter. 20 Ill. Adm. Code 504.850(f).

IDOC regulations provide for some special situations.   For example, if the inmate believes his complaint is an emergency, he may file an emergency grievance directly with the warden, who decides whether the complaint is a true emergency warranting expedited treatment.   20 Ill. Adm.

Code 504.840. The ARB must expedite review of emergency grievances. 20 Ill. Adm. Code 504.850(g). Also, if the inmate is complaining about a non-property-related incident that occurred at an institution where he is not housed at the time of his complaint, he must send his grievance directly to the ARB. 20 Ill. Adm. Code 504.870(a)(4).

Grievances must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. . . . [or] as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(b). However, even if it does not name or describe a specific defendant, a grievance is adequate if it alerts prison officials of the particular acts about which the inmate complains and invites corrective action. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (noting the function of a grievance is "alerting the state and inviting corrective action").

A prisoner need only exhaust remedies that are "available" to him. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). For example, a remedy is deemed to be unavailable if prison officials fail to respond to inmate grievances and thereby prevent the progress of the grievance through the administrative remedy process. *Lewis*, 300 F.3d at 833; *see Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001). Additionally, it is an open question in the Seventh Circuit whether prison officials who interfere with an inmate's filing a grievance are equitably estopped from asserting the failure to exhaust defense. *See Schultz v. Pugh*, 728 F.3d 619, 622 (7th Cir. 2013) (acknowledging court has "left open the possibility that equitable estoppel might be a defense to failure to exhaust prison remedies"). It is clear, however, that remedies are unavailable if a prison official uses affirmative misconduct to prevent a prisoner from exhausting. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th

Cir. 2015) (prison officials misinformed inmate in segregation he could not file grievance); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (prison officials lost grievance).

      B.      <u>Attempts to Exhaust</u>

The Court now turns to Shatner's attempts to exhaust his administrative remedies at Menard and at Pontiac.

      1.      <u>Three Grievances at Menard</u>

Shatner testified that he attempted to file a grievance three separate times about Nwaobasi and the lack of treatment for his ingrown toenails beginning in February or March 2012. He testified that these attempts occurred while Menard was on lockdown – which it was most of 2012 – by placing the grievances between his cell bars. Shatner and Price agreed that during lockdowns, this was the accepted method of placing a grievance into the prison mail system. They also agreed that correctional officers were supposed to pick up the mail from the cell bars and direct it to the appropriate person, for example, a correctional counselor. Neither Shatner nor Price had personal knowledge about whether correctional officers actually delivered all grievances to counselors as addressed. Shatner testified he does not have copies of any of these three grievances because of problems obtaining copies from Menard staff.

Price testified that she had received grievances from Shatner regarding a typewriter and a religion issue when she was his counselor but that she never received any grievance from Shatner about medical treatment for his ingrown toenails. She also testified that Shatner never complained to her about a lack of response to the medical grievances he claimed to have filed. She further testified that counselors noted on an inmate's Cumulative Counseling Summary any time they received an inmate grievance or had communication with an inmate.

Shatner's Cumulative Counseling Summary reflects one grievance submitted to a

counselor regarding "medical treatment" between February 2012 and January 2013, but that grievance dealt with the lack of exercise outside his cell.  It does not reflect the receipt of any grievance regarding treatment for ingrown toenails or any inquiry from Shatner about unanswered grievances about treatment for ingrown toenails.

The Court does not find Shatner's testimony that he filed grievances at Menard to be credible.  In making this decision, it took into account Shatner's manner while testifying, his lack of memory of details about the grievances, and his self-interest in providing evidence he filed such grievances.  The Court also finds it unreasonable to believe Shatner filed three grievances yet failed to take note of or copy any of those grievances, especially after the earlier grievances allegedly went unanswered.  Finally, Shatner's testimony is inconsistent with the testimony of Price, who had no self-interest in the matter, and the Cumulative Counseling Summary showing no filing or inquiry from Shatner about a grievance regarding toenails.

For these reasons, the Court finds Nwaobasi has established by a preponderance of the evidence that Shatner did not file at Menard any grievance concerning Nwaobasi's treatment of his ingrown toenails.

    2.  <u>First Grievance At Pontiac</u>

The Court now turns to Shatner's emergency grievance dated February 17, 2013.  Shatner testified that he had complained to his counselor and nurses at Pontiac about his painful toenails and that he had told them he needed immediate medical attention.  Shatner testified they told him if he was in serious pain, he should file an emergency grievance.  Shatner testified that he sent an emergency grievance to the warden at Pontiac (Doc. 49 at 12) but that it was returned with markings in the "Counselor's Response" section indicating it was outside the jurisdiction of Pontiac and was not an emergency.  The "Emergency Review" section was blank.

Lingle, who supervised Shatner's counselors at Pontiac, testified that when a grievance has the "emergency" box checked immediately above the inmate's signature, the counselor does not fill in the "Counselor's Response" section or make any other markings on the grievance and instead forwards the grievance to the warden's office, where it is stamped with the time and date of receipt by that office. The warden or his designee then completes the "Emergency Review" section, indicating whether the grievance is deemed an emergency. Lingle testified that counselors do not make the determination about whether a grievance is an emergency.

No emergency grievance from Shatner on or around February 17, 2013, was logged into the emergency grievance log, where all emergency grievances were recorded. In addition, Shatner's Cumulative Counseling Summary does not reflect any grievance submitted on or around February 17, 2013. It does, however, reflect that Shatner had filed a grievance in 2010 at Menard about an incident at Stateville Correctional Center ("Stateville") and that the grievance was returned to him because it was outside Menard's jurisdiction.

The Court does not find Shatner's testimony that he filed a grievance on or around February 17, 2013, to be credible. In making this decision, the Court takes into account Shatner's manner while testifying and his self-interest in providing evidence he filed such a grievance. The Court also finds his testimony unreasonable in light of the documentary evidence in the case. Specifically, the markings on the grievance Shatner claimed he filed did not reflect it was processed in the manner emergency grievances are actually processed at Pontiac, and the grievance was not reflected on either the emergency grievance log or the Cumulative Counseling Summary. For these reasons, the Court finds Shatner did not file the grievance dated February 17, 2013.

Even if Shatner had filed the grievance dated February 17, 2013, he did not file it in the

manner IDOC rules require.  Grievances about incidents at an institution where the inmate is not housed at the time of filing must be sent to the ARB, 20 Ill. Adm. Code 504.870(a)(4), but Shatner send his grievance to the warden at Pontiac.

Equitable estoppel will not prevent Nwaobasi from raising the failure to exhaust as an affirmative defense.  Nor does any conduct by Pontiac staff amount to the kind of misconduct that would render a remedy "unavailable."  The undisputed evidence shows Shatner's counselor and nurses at Pontiac told him to file an emergency grievance when he complained that he needed immediate treatment for his toenails.  This was, in fact, an accurate description of the procedure to go about getting immediate treatment at his current institution.  He did not ask them how to file a grievance about his treatment at another institution, and they in no way represented – or misrepresented – the procedure to be used for such grievances, which is set forth at 20 Ill. Adm. Code 504.870(a)(4).  Shatner made the same kind of mistake in 2010 when he grieved an incident at Stateville through the Menard grievance procedure, so he was aware of the hazards of not following the proper filing procedure.

For these reasons, the Court finds Nwaobasi has established by a preponderance of the evidence that Shatner did not file at Pontiac on or around February 17, 2013, a grievance about Nwaobasi's treatment of his ingrown toenails.  Alternatively, Shatner did not file the February 17, 2013, grievance in a manner that complied with IDOC requirements.

       3.     <u>Second Grievance At Pontiac</u>

The Court now turns to Shatner's grievance dated March 19, 2013, which he correctly sent directly to the ARB.  Shatner conceded at the hearing that this grievance was filed beyond the 60-day deadline set forth in 20 Ill. Admin. Code § 504.810(a), and, indeed, his objection does not challenge Magistrate Judge Frazier's findings accordingly in the Report.  Therefore, the Court

9

finds Nwaobasi has established by a preponderance of the evidence that Shatner did not file his March 19, 2013, in the manner required by IDOC rules.

In sum, the Court finds that Shatner failed to exhaust administrative remedies available to him, that he was at fault in this delinquency, and that his claims against Nwaobasi should therefore be dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report (Doc. 60) as **MODIFIED** by this order;

- **OVERRULES** Shatner's objections (Doc. 62);

- **GRANTS** Nwaobasi's motion (Doc. 44);

- **DISMISSES** Shatner's claims in this case against Nwaobasi **without prejudice**. Nwaobasi is terminated from this case;

- **DENIES as moot** Nwaobasi's motion for an extension of time to complete discovery and to file a dispositive motion (Doc. 66); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   July 30, 2015**

                                       s/ J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**